UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID WILSON,

                      Petitioner,                  Case No. 2:18-cv-11243
                                                               Hon. Victoria A. Roberts

v.

DUNCAN MACLAREN,

                      Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS, AND (4) DENYING PETITIONER'S PENDING MOTIONS**

David Wilson, ("Petitioner"), a Michigan prisoner, filed this action under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of felonious assault, MICH. COMP. LAWS § 750.82, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, second offense MICH. COMP. LAWS § 750.227b. Petitioner was sentenced as a fourth-time habitual felony offender to a controlling composite sentence of 136-to-300 months' imprisonment.

The petition raises six claims: (1) Petitioner was denied his right to a speedy trial, (2) insufficient evidence was presented at trial to support Petitioner's convictions, (3) insufficient evidence was presented at the preliminary examination to bind Petitioner over for trial, (4) the trial court erred in denying Petitioner's motion for a directed verdict, (5) the prosecutor impermissibly used Petitioner's silence to impeach his trial testimony, and (6) the prosecutor committed misconduct at trial.

1

The Court will deny the petition because Petitioner's claims are without merit. The Court will also deny Petitioner a certificate of appealability, grant permission to appeal in forma pauperis, and deny Petitioner's pending motions.

## I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from an altercation with the victim, a landlord, on January 29, 2013. The landlord was in the process of evicting defendant's niece from a home owned by the landlord in Detroit. The niece was being uncooperative, so the landlord called the police. Defendant confronted the landlord while the landlord was sitting in his car in front of the house, waiting for the police to arrive. After an argument, defendant opened the landlord's car door, the two men briefly struggled, and the landlord reached to close the car door. The landlord saw defendant reaching for something in his coat pocket, which he thought might be a gun, so he ducked as he began to drive away in his car. The landlord testified that he saw defendant remove a black object from his coat pocket, but admitted that he could not tell if the object was a gun. As the landlord started to drive away, he heard two gunshots coming from defendant's direction. He did not actually see defendant shoot, but he did not see anyone else outside at the time of the shooting and the circumstances led him to believe that the gunshots were fired by defendant. One bullet struck the landlord in the elbow. Defendant denied possessing a firearm and claimed that the black object he removed from his coat pocket was a cell phone. Defendant believed that the gunshots came from two different directions and were fired by two groups of people who were shooting at each other.
>
> Defendant was originally charged with assault with intent to commit murder, MCL 750.83, assault with intent to do great bodily harm less than murder, MCL 750.84, felonious assault, felon in possession of a firearm, and felony-firearm. In October 2013, a jury convicted defendant of the felonious assault, felon-in-possession, and felony-firearm charges. In a prior appeal, this Court reversed defendant's convictions because he did not properly waive his right to counsel before representing himself at trial. *People v. Wilson*, unpublished opinion per curiam of the Court of Appeals, issued March 24, 2015 (Docket No. 319418). Defendant was retried in October 2015, and a jury again convicted him of felonious assault, felon-in-possession, and felony-firearm.

*People v. Wilson*, 2017 WL 2704912, at *1-2 (Mich. Ct. App. Jun. 22, 2017).

Following his second trial and conviction as described above, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His brief on appeal filed by his appellate counsel raised his first two claims, and his supplemental pro se brief raised four additional claims:

> I. The right to a speedy trial is enshrined in the Constitution. The United States Supreme Court has adopted a four-part balancing test to determine whether delay in trial, attributable to the state, has resulted in a violation of this constitutional right. The state's failure to bring Mr. Wilson to trial for over 32 months created a presumption of prejudice that the state cannot overcome.
>
> II. The evidence was insufficient to support the convictions in violation of US Const Ams V, XIV; Const 1963, art 1, § 17.
>
> III. The evidence offered at the examination did not establish good reason or sufficient proof to determine that the charged crime was committed and failed to establish that probable cause existed to believe that defendant committed the crimes.
>
> IV. The trial court violated defendant's state and federal right to due process by failure to find beyond a reasonable doubt of the existence of every element of the offense before denial of direct verdict. The trial court erred by failure to review the record as a whole and state facts and conclusions of law in the record.
>
> V. The prosecutor violated defendant's 5th Amendment right by impermissibly eliciting and commenting on his post-arrest, post-*Miranda* silence during cross examination.
>
> VI. Defendant was denied his right to a fair trial as guaranteed by the 6th and 14th Amendments to the United States Constitution and Michigan Constitution, 1963, art 1, § 20 where the prosecution knowingly introduced and permitted false testimony to obtain a conviction and deliberately misstated facts and evidence in summation and rebuttal.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Id*. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Wilson*, 909 N.W.2d 244 (Mich. 2018) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

A. Speedy Trial

Petitioner's first claims asserts that his right to a speedy trial guaranteed by the Sixth Amendment was violated. Petitioner asserts that there was a 32-month delay from the time of the initial accusation until his retrial commenced after the reversal of his first conviction. The Michigan Court of Appeals, after reciting the applicable constitutional standard, denied relief as follows:

> A delay of six months is necessary to trigger further investigation into a speedy trial claim. *People v. Daniel*, 207 Mich. App. 47, 51 (1994). This Court issued its decision reversing defendant's convictions on March 24, 2015. Defendant's second trial began on October 5, 2015. Thus, the period of delay between reversal of defendant's convictions and the start of defendant's second trial was approximately 6½ months. Delays inherent in the judicial system, such as docket congestion, are technically attributable to the prosecution, but they are given a neutral tint and assigned only minimal weight when evaluating a speedy trial claim. *Williams*, 475 Mich. at 263. Therefore, although the 6½-month period between this Court's reversal of defendant's convictions and the start of defendant's second trial may be attributed to the prosecution, it is accorded a neutral tint and minimal weight.
>
> Adding both the period of time between defendant's arrest and the start of defendant's first trial (approximately 8½ months)[3] and the period of time between the conclusion of defendant's prior appeal and the start of his second trial (approximately 6½ months), leads to a total period of delay of approximately 15 months. Because the total period of time is less than 18 months, defendant had the burden of showing that he was prejudiced by the delay. *Rivera*, 301 Mich. App. at 194. While defendant claims that he suffered prejudice to both his defense and his person, he does not explain how his defense was affected by the delay. He has not identified any evidence that was lost or witnesses who became unavailable. See *Williams*, 475 Mich. At 264; *People v. Collins*, 388 Mich. 680, 694 (1972). We note that when this issue was argued below on September 25, 2015, defense counsel stated that she was not able to locate defendant's niece, and none of the family members knew her whereabouts. However, defendant does not argue on appeal that he was prejudiced by not being able to produce his niece at trial, or that his inability to locate her was caused by the delay in proceeding to

trial. Defendant similarly fails to explain how he suffered prejudice to his person, other than by generally referring to the time he spent in jail or prison. See *Collins*, 388 Mich. at 694 (prejudice to a person "would take the form of oppressive pretrial incarceration leading to anxiety and concern"). Again, the countable time in this case was less than 18 months, so prejudice cannot be presumed, and prejudice to the defense, which has not been shown, is the more serious question when compared to prejudice to the person. See *Williams*, 475 Mich. at 264 (citing cases with delays of 19 and 27 months where the defendants were not deprived of their speedy trial rights, despite incarceration for the entirety of the delays, given the absence of prejudice to the defenses). Even if we count the entire period from defendant's arrest up to the date of his second trial, excluding the period of defendant's prior appeal, defendant has not shown that he was deprived of his constitutional right to a speedy trial.

------

[3] We are proceeding on an assumption that the period of time between defendant's arrest and the first trial is countable and subject to consideration in analyzing defendant's speedy trial claim under the procedural posture of this case. We seriously question whether it would be proper to count any of this period in favor of defendant, as opposed to simply and solely examining the period between the appellate decision and the second trial.

*Wilson*, 2017 WL 2704912, at *3-4.

The Sixth Amendment to the United States Constitution provides a criminal defendant with the constitutional right to a speedy trial. U.S. CONST. amend. VI. To determine whether a speedy trial violation has occurred, a reviewing court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No single factor is determinative; rather a court must weigh the factors and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. *Id.* at 533. The right to a speedy trial "is 'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon*, 556 U.S. 81 (2009) (citation omitted). That said, the length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. To trigger a speedy trial analysis, a defendant must allege that the

interval between accusation and trial has crossed the line between ordinary delay and presumptively prejudicial delay. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). Courts have generally found delays of one year or more to be "presumptively prejudicial." *Id.* at 652, n.1.

Petitioner calculates the delay in his case as spanning from the date of the initial accusation on July 16, 2013, through his conviction and appeal, and ending on the date of his retrial on October 5, 2015. The speedy trial guarantee, however, does not apply once a defendant has been found guilty. *Betterman v. Montana*, 136 S. Ct. 1609, 1612 (2016). "As a measure protecting the presumptively innocent, the speedy trial right - like other similarly aimed measures - loses force upon conviction." *Id.* at 1614. Accordingly, when a defendant obtains a reversal of his conviction on appeal, the speedy trial clock restarts when the reversal order becomes final. See *United States v. Fountain*, 840 F.2d 509, 511 (7th Cir. 1988) (after reversal of conviction on appeal, speedy trial clock begins to run when court of appeals issues mandate); 18 U.S.C. § 3161(e) ("If the defendant is to be tried again following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final.").

Here, the Michigan Court of Appeals reversed Petitioner's first conviction on March 24, 2015, and he was tried less than seven months later on October 5, 2015. While the Michigan Court of Appeals added the delay before the first trial (8½ months) to the delay after reversal (6½ months) to arrive at a 13 month delay, that calculation was not required by clearly established Supreme Court law. The time span relevant here is the one from reversal to retrial, which was not long enough to give rise to a presumption of prejudice.

7

The only allegation of actual prejudice made Petitioner in the state courts is that he was unable to locate and call his niece as a defense witness. But Petitioner made no effort to demonstrate how her testimony would have aided his defense. It was not unreasonable for the state court to reject Petitioner's claim based on his failure to proffer facts to demonstrate that he was actually prejudiced by any delay. The claim is therefore without merit.

B. Sufficiency of the Evidence

Petitioner's second claim asserts that insufficient evidence was presented at trial to support his convictions. Petitioner argues that the prosecution only presented evidence establishing that he was in proximity to the location of the shooting, but it failed to present any evidence indicating that he was the shooter or possessed a firearm. He notes that no firearm was recovered, and that the victim testified that he could not identify the object he saw in Petitioner's hand as a firearm.

After reciting the controlling constitutional standard, the Michigan Court of Appeals rejected this claim on the merits as follows:

> It was undisputed at trial that the landlord was shot by a firearm. The evidence that he sustained a gunshot wound was sufficient proof that a firearm was used in this crime. The issue at trial focused on the identity of the shooter. Identity is an element of every offense. *People v. Yost*, 278 Mich. App. 341, 356 (2008).
>
> Defendant acknowledges that the landlord described seeing him remove a black object from his coat pocket just before the shots were fired, but argues that the type of ammunition linked to the shooting could not have been fired from a gun small enough to fit in his coat pocket. We disagree. The police recovered two spent .380 shell casings from the scene, and a bullet fragment recovered from the landlord was consistent with that type of shell casing. A police officer testified that a "380 is actually a small firearm" and that, although there are several different makes of it, "a 380 is typically . . . a small, very small handgun." This evidence permitted the jury to infer that the landlord was shot with a gun that could have fit into defendant's coat pocket.

> Defendant argues that because the landlord conceded that he did not see an actual gun, and because the landlord admitted that he assumed that others at the house were also armed, it is possible that someone else fired the shots at him. The landlord testified, however, that the shots were fired after he saw defendant remove a black object from his coat, that the shots came from the left side of his car where defendant was standing, and that he did not see anyone else outside when the shots were fired. This testimony allowed the jury to infer and conclude, reasonably so, that defendant was the shooter, even if the landlord did not actually see a gun or see defendant fire the shots. Defendant's actions before the shooting, including keeping his right hand in his coat pocket, were also consistent with him having a gun in that pocket. Defendant argues that a scenario identifying him as the shooter cannot logically comport with both the landlord's testimony that the gunshots were fired before he pulled off in his car, while defendant was still standing at the left side of the car, and the fact that the gunshots were fired through the rear side window. The landlord testified on direct examination that he was "[i]n the process of . . . slamming the door and trying to shift gears to pull off" when he heard the two gunshots. On cross examination, the landlord acknowledged that he had previously testified that he "hadn't even pulled off yet" when the shots were fired. These accounts are not inconsistent with defendant firing the shots through the left-side rear backseat window from his position on the left side of the car. Viewed in a light most favorable to the prosecution, the evidence and reasonable inferences arising from the evidence was sufficient to establish defendant's identity as the shooter beyond a reasonable doubt.

*Wilson*, 2017 WL 2704912, at *6.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review - the factfinder at trial and the state court on appellate review - as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

The Michigan Court of Appeals reasonably rejected this claim. The victim, Casey Love, testified that Petitioner confronted him after Love attempted to evict Petitioner's niece from his property. Dkt. 17-17, at 105-09. Love saw Petitioner remove a black object from his coat pocket immediately before shots were fired. Id. at 114. He attempted to flee in his car when he heard shots, and he was struck in his left arm by a bullet. Id. at 114-15. Love testified that that the shots came from where Petitioner was standing. Id. at 115-16. Love did not see anyone else in the area other than Petitioner when the shots were fired. Id. at 130. Accordingly, even though the victim never actually saw a gun, a rational juror could conclude beyond a reasonable doubt from the rest of his testimony that Love was shot when Petitioner pulled a gun from his coat pocket and fired it at him. Direct evidence of Petitioner's guilt was not required. Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010). The claim is without merit.

C. Preliminary Examination

Petitioner asserts that insufficient evidence was presented at the preliminary examination in the state district court to support the bind-over for trial in the state circuit court. This claim does not present a cognizable basis for habeas relief. There is no general constitutional right to a preliminary examination before trial. See *Gerstein v. Pugh*, 420 U.S. 103, 125 n. 26 (1975); *Harris v. Neil*, 437 F.2d 63, 64 (6th Cir. 1971). A state court's failure to hold a preliminary examination altogether does not present a cognizable habeas claim. See *Scott v. Bock*, 241 F. Supp. 2d 780, 793 (E.D. Mich. 2003). A claim that the evidence offered at a preliminary examination was insufficient for a finding of probable cause is therefore not cognizable on habeas review. See *David v. Lavinge*, 190 F. Supp. 2d 974, 978 (E.D. Mich. 2002); *Prowell v. Overton*, 1994 U.S. App. LEXIS 9159, 1994 WL 146842, * 1 (6th Cir. April 22, 1994).

D. Directed Verdict

Petitioner asserts that the trial court erred in denying his motion for a directed verdict made after the prosecution rested. A state court's alleged error in denying a directed verdict motion is a state law issue which is not cognizable in a federal habeas proceeding. See *King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001); see also *Holloway v. Palmer*, 2017 U.S. App. LEXIS 27942, 2017 WL 4844457, *3 (6th Cir. April 5, 2017). To the extent Petitioner asserts he was entitled to a directed verdict because constitutionally insufficient evidence was presented to sustain his conviction, that issue was reasonably rejected by the state courts as indicated above.

E. Use of Petitioner's Silence

Petitioner next claims that the prosecutor impermissible used his post-arrest silence to impeach his trial testimony on cross examination. Respondent asserts that the claim is procedurally defaulted because Petitioner did not object at trial. The Michigan Court of Appeals rejected the claim as follows:

> Defendant additionally argues that the prosecutor impermissibly elicited testimony concerning, and commented on, his post-arrest, post-*Miranda* silence. The issue was unpreserved; therefore, our review is for plain error affecting defendant's substantial rights. *People v. Shafier*, 483 Mich. 205, 219 (2009). To the extent and assuming that under *Doyle v. Ohio*, 426 U.S. 610 (1976); *People v. Borgne*, 483 Mich. 178 (2009), and *Shafier*, the prosecutor overstepped his bounds, defendant has failed to establish the requisite prejudice, nor has he shown that any assumed error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of his innocence. *Shafier*, 483 Mich. at 219-220. Any error was limited and not pervasive and there was strong untainted evidence of defendant's guilt, along with a dearth of evidence supporting defendant's exculpatory testimony. Reversal is unwarranted.

*7 (footnote omitted).

By finding that the claim was limited to "plain error" review, the Michigan Court of Appeals determined that Petitioner's claim was procedurally defaulted based on his failure to

11

comply with Michigan's contemporaneous object rule, and that finding likewise bars habeas review absent a showing of "cause and prejudice." See e.g., *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). The only conceivable candidate for "cause" would be an argument that Petitioner's trial counsel was ineffective for failing to object to the allege misconduct. However, when a habeas petitioner claims ineffective assistance of counsel as cause for a procedural default, the allegation is a separate claim which must itself be exhausted in state court according to the normal procedures. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). The failure to exhaust the ineffectiveness claim will itself constitute a procedural default of the cause argument and prevents a federal court from hearing it. *Id*. Petitioner never exhausted a claim that his trial counsel was ineffective for failing to object to the alleged misconduct, and therefore he cannot demonstrate cause to excuse his default. Review of this claim is therefore barred.

Even if it were not defaulted the claim nevertheless does not entitle Petitioner to habeas relief. It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-*Miranda* silence to impeach a defendant's exculpatory testimony. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). Put another way, "*Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances." *Anderson v. Charles*, 447 U.S. 404, 408 (1980). Isolated references to a defendant's exercise of his right to remain silent do not deprive a criminal defendant of a fair trial when the prosecution does not use the defendant's silence to prove his guilt. *U.S. v. Weinstock*, 153 F.3d 272, 280-81 (6th Cir. 1998); see also *U.S. v. Robinson*, 357 F. App'x. 677, 683 (6th Cir. 2009) (both citing *Greer v. Miller*, 483 U.S. 756 (1987)).

The record shows that Petitioner testified at trial that he confronted Love while Love was seated in his car, and that he had a cell phone rather than a gun in his pocket. Dkt. 17-18, at 103-

105. When Petitioner heard shots coming from two different directions, he told his niece to call the police. Id. at 117-120. On cross-examination, the prosecutor asked Petitioner whether he told this version of events to the police when he was arrested. Id. at 136. The prosecutor then repeatedly questioned Petitioner about his failure to make a statement to police in line with his trial testimony. Id. at 136-39. The prosecutor did not mention Petitioner's failure to make a statement during closing argument.

The cross examination of Petitioner focused the jury's attention on the fact that Petitioner was silent in the fact of police interrogation. The prosecutor sought to draw the impermissible inference that Petitioner's testimony about what happened on the night of the incident was not credible because he did not tell the same story to police. This is a textbook example of what *Doyle* prohibits. The Michigan Court of Appeals, reviewing the error for "plain error," essentially found that any error was harmless. Where a *Doyle* violation occurs, a habeas petitioner is entitled to relief only if the state's improper use of post-*Miranda* silence "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Given the fact that the prosecutor did not mention Petitioner's silence during closing argument, and given the otherwise strong circumstantial evidence indicating Petitioner's guilt, the three transcript pages of questioning regarding Petitioner's silence did not have a substantial and injurious effect or influence on the verdict.

Petitioner failed to demonstrate entitlement to habeas relief with respect to this defaulted claim.

F. Prosecutorial Misconduct

Petitioner's second claim asserts that the prosecutor committed misconduct during trial by allowing the victim to falsely testify that he saw Petitioner remove an object from his pocket

13

when he previously told police that he ducked his head down when Petitioner put his hand in his pocket.

The Michigan Court of Appeals rejected the claim; it said the record did not indicate that any false testimony was presented:

> Defendant next argues that the prosecutor engaged in misconduct by misrepresenting the evidence during closing and rebuttal arguments and by failing to correct the landlord's "false" testimony at trial. The record belies defendant's assertions. Upon consideration of his trial and preliminary examination testimony, there is no indication that the landlord gave false or even inconsistent testimony regarding the object in defendant's pocket. And there certainly was no evidence or information in the record remotely suggesting that the prosecutor knowingly acquiesced in the presentation of perjured testimony. See *People v. Aceval*, 282 Mich. App. 379, 389 (2009). Further, the prosecutor's remarks during closing and rebuttal arguments challenged by defendant were either directly supported by the evidence or constituted reasonable inferences arising from the evidence, such as the argument that defendant possessed a firearm in his pocket and shot the landlord with it. See *People v. Bahoda*, 448 Mich. 261, 282 (1995). There is no basis for reversal predicated on prosecutorial misconduct.

*James*, 2016 WL 3267143, at *7.

For a petitioner to be entitled to habeas relief based on prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Petitioner asserts that the prosecutor elicited false testimony. To prevail on such a claim, Petitioner must show that (1) the testimony was false, (2) the testimony was material, and (3) the prosecutor knew the testimony was false. *Abdus-Samad v. Bell*, 420 F.3d 614, 625-26 (6th Cir. 2005) (citing *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir. 1992).

Petitioner satisfies none of these requirements. The fact that the victim previously said he ducked his head when he saw Petitioner put his hand in his pocket does not render his testimony false - that he also saw Petitioner produce an object from his pocket. Nor has Petitioner shown that the prosecutor knew the victim's trial testimony to be false. The claim is without merit.

G. Pending Motions

Petitioner filed a motion for stay [Dkt. 15] and a motion for an evidentiary hearing. [Dkt. 20]. Petitioner's motion for stay asserts that his trial counsel was ineffective for failing to call LaChrista Pratt and another person as defense witnesses. Dkt. 15, Exhibit 1. This claim was not presented to the state courts. Petitioner requests a stay of proceedings so he can exhaust the new claim there and return to this Court and raise the claim in this action.

A federal district court has discretion to stay a petition to allow a petitioner to present unexhausted claims to the state courts and then return to federal court on a perfected petition. See *Rhines v. Weber*, 544 U.S. 269, 276 (2005). Stay and abeyance is available, however, only in "limited circumstances" such as when the one-year statute of limitations poses a concern, when the petitioner demonstrates "good cause" for the failure to exhaust state remedies before proceeding in federal court, the petitioner has not engaged in intentionally dilatory litigation tactics, and the unexhausted claims are not "plainly meritless." *Id*. at 277.

Petitioner has failed to demonstrate "good cause" for failing to raise his ineffective assistance of counsel claim during his direct appeal. Attached to his motion for stay is a letter from his appellate counsel dated March 9, 2016, informing him of his ability to raise an ineffective assistance of counsel claim in his *pro se* supplemental brief. Petitioner, in fact, filed a

15

*pro se* supplemental brief in the Michigan Court of Appeals, but he did not raise this claim in it. Petitioner offers no explanation for his omission.

Moreover, the claim is "plainly meritless." The communication from Petitioner's private investigator to Petitioner's trial counsel indicates "[Ms. Pratt] was laying down in the car when they arrived at the niece's house. They were there about 20 minutes altogether. She remembers hearing arguing, then what she thought was a gunshot. She doesn't know what it was about or who was arguing. After a few minutes, [Petitioner] returned to car and they left. She thinks there was either one of two persons there but isn't sure, and cannot identify them." Dkt. 15, Exhibit p. 1. The investigator attempted to contact another suggested witness, but he could not locate her. Id.

Counsel was not ineffective for failing to call witnesses who had nothing to offer to Petitioner's defense. Nor has Petitioner attempted to demonstrate that his counsel was ineffective in his attempts to locate the other witness. The claim is plainly meritless; a stay is not warranted.

Petitioner requests an evidentiary hearing to offer new evidence showing that the prosecutor offered false evidence at trial. Dkt. 20. In *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011), the Supreme Court held that where habeas claims have been decided on their merits in state court, a federal court's review under 28 U.S.C. section 2254(d)(1)—whether the state court determination was contrary to or an unreasonable application of federal law—is limited to the record reviewed by the state courts. As indicated above, the Michigan Court of Appeals reasonably rejected Petitioner's prosecutorial misconduct claim based on the record evidence. Petitioner is prohibited under *Cullen* from undermining the state court decision by expanding the record in this Court.

Accordingly, both of Petitioner's motions are denied.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, the Court must decide whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of Petitioner's claims; they are devoid of merit or barred from review. The Court will deny a certificate of appealability.

If Petitioner chooses to appeal the Court's decision, however, he may proceed in forma pauperis because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, 3) **DENIES** Petitioner's motion for stay, 4) **DENIES** Petitioner's motion for evidentiary hearing, and 5) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

s/ Victoria A. Roberts
Hon. Victoria A. Roberts
United States District Judge

Dated: 3/1/2019